■ THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, as Attorney General of State of New York, Respondent, v RICHARD J. DAME, Individually and Doing Business as PRECISION ROOFING Co., Appellant. (Appeal No. 2.) [735 NYS2d 444] —Appeal unanimously dismissed without costs (see, CPLR 5501 [a] [1]). (Appeal from Order of Supreme Court, Onondaga County, Stone, J.—Summary Judgment.) Present—Pigott, Jr., P. J., Hayes, Wisner, Scudder and Burns, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, as Attorney General of State of New York, Respondent, v RICHARD J. DAME, Individually and Doing Business as PRECISION ROOFING Co., Appellant. (Appeal No. 3.) [734 NYS2d 789] —Order and judgment unanimously affirmed without costs. Memorandum: Petitioner commenced this proceeding alleging that respondent engaged in "deceptive, fraudulent and illegal practices, including price gouging," during the state of emergency that was declared in certain New York counties as the result of a storm in September 1998. Petitioner alleged that respondent charged homeowners, particularly senior citizens, excessive prices for roof repairs and failed to provide the customers with written contracts and information required by law. Following a trial, respondent was ordered to pay restitution, costs and civil penalties totaling $18,785 for violations of General Business Law § 396-r and article 36-A and was enjoined, pursuant to Executive Law § 63 (12), from further engaging in fraudulent, deceptive and illegal business practices.

We reject the contention of respondent that Supreme Court erred in finding that he violated General Business Law § 396-r. That section prohibits charging unconscionably excessive prices for essential services during disruptions in the market caused by forces such as power failures, weather conditions and other emergencies. General Business Law § 396-r (2) provides that, "During any abnormal disruption of the market for consumer goods and services vital and necessary for the health, safety and welfare of consumers, no party within the chain of distribution of such consumer goods or services or both shall sell or offer to sell any such goods or services or both for an amount which represents an unconscionably excessive price." That subdivision further defines "consumer goods and services" as including "any repairs made by any party within the chain of distribution of consumer goods on an emergency basis as a result of such abnormal disruption of the market." Here, it is undisputed that a state of emergency had been declared, and the evidence was unrefuted that at least six of respondent's customers were charged unconscionably excessive prices for